THE FIRST NATIONAL BANK OF DETROIT ET AL. v. THE E. T. BARNUM WIRE AND IRON WORKS ET AL.

[See 58 Mich. 124, 315.]

*Receiver—Appointed for benefit of all persons who may establish rights in the case—Not complainant's agent—As an officer of the court, should equally represent all parties—Power of removal—Rests in discretion of the court—Governed by circumstances of each particular case— Should remain unbiased and impartial, or be removed.*

1. A receiver is not appointed for the benefit merely of the party on whose application the appointment is made, but equally for the benefit of all persons who may establish rights in the case. He is not the

complainant's agent, but should be equally the representative of all the parties in his capacity as an officer of the court.

2. The exercise of the power to remove a receiver for cause is regarded as a matter properly resting in the discretion of the court, and must necessarily be governed by the circumstances of each particular case; and, as an officer of the court, the receiver should remain unbiased and impartial, or be removed. The position is one often requiring the exercise of the soundest judgment, and always the strictest impartiality among creditors. [See authorities cited on page 499 of opinion.]

3. In this case it is held that all the petitioner can ask in the premises is the payment of his debt in full when he shall have established it in such a manner that the receiver can make payment in safety, which relief has already been secured to him by the action of the court below—and this is the extent of his interest in the matter; that as he is not prejudiced by the non-removal of the receiver, and the other creditors are satisfied with that officer, it would be unjust to them to remove him.

Appeal from Wayne. (Speed, J.) Argued January 26 and 27, 1886. Decided April 15, 1886.

Appeal from order dismissing petition of creditor for removal of receiver and for other relief. Affirmed. The facts are stated in the opinion.

*Henry M. Duffield*, in *pro. per.*, and *Isaac Marston*, for petitioner :

It is a general rule that whenever a party, by fraud, accident, mistake, or otherwise, has obtained an advantage in proceeding in a court of ordinary jurisdiction which must necessarily make that court an instrument of injustice, a court of equity will interfere to prevent a manifest wrong, by restraining the party whose conscience is thus bound, from using the advantage which he has there gained: 2 Daniell's Ch. Practice, p. 1623, and cases cited.

All the parties of whom action is asked being actually before the court, and all parties in interest being either before the court by appearance in this suit or constructively so under the frame of the bill in this cause, a petition is the proper form of application to obtain the relief prayed : *Hays v. Miles*, 9 Gill and Johnson, 193 ; and even if the petition asked too much, that would not defeat it entirely,—the court

should still grant what is rightfully asked for: *Duvall v. Bank of Maryland*, 4 Gill and Johnson, 282.

The authorities hold that a receiver should be an indifferent person between the parties, appointed by the court to take possession of property which is the subject of litigation, and to hold the same and apply the profits, or dispose of the property itself, under the direction of the court: 2 Daniell's Ch. Pr. p. 1715, and cases cited; 5 Wait's Actions and Defenses, p. 353, and cases cited; and, as the receiver is appointed for the benefit of all parties to the suit, it is his duty to protect the property in his hands to the best of his ability for all, with a view to the equitable rights of all: *Iddings v. Bruen*, 4 Sandf. Ch. 417; 5 Wait's Actions and Defenses, p. 381.

He is not appointed for the benefit merely of the plaintiff, or him on whose application the appointment is made, but for the equal benefit of all persons who may establish rights in the case.   He is not the plaintiff's agent, but is clearly the representative of all parties in his capacity of an officer of the court: *Delany v. Mansfield*, 1 Hogan, 234 (Irish Rolls Ct.); High on Receivers, § 175; and see the clear statement by Mr. Justice Swayne, of receivers' powers and duties, in *Davis v. Gray*, 16 Wallace (U. S.) 217, 218.

The receiver of a corporation represents the rights of both creditors and stockholders; he is therefore the trustee of all parties in interest.   He cannot discriminate in favor of some and against others: Edwards on Receivers, p. 41; and in the case at bar this Court says: "He is a trustee, and subject to the general duties requiring fairness and impartiality.   He cannot lawfully collude with any one, and cannot lawfully prefer one set of interests to another:" 58 Mich. at page 317.

The following authorities are collected as bearing upon questions involved under the petition:

The powers and duties of a receiver are those of an officer of the court: *Devendorf v. Dickinson*, 21 How. Pr. (N. Y.) 275; and, as a general rule, a receiver has no powers except those conferred upon him by the order of his appointment: *Grant v. Davenport*, 18 Iowa, 179.

A receiver is an officer of the court.   His appointment determines no right, nor does it affect the title of the property, and it will not prevent the running of the statute of limitations.   His holding is the holding of the court for him from whom the possession was taken.   He is appointed on behalf of all parties: *Ellicott v. U. S. Ins. Co.*, 7 Gill (Md.) 307; and the effect of his appointment is not to oust

any party of his right to the possession of the property, but merely to retain it for the benefit of the party ultimately entitled, and when such party has been ascertained the receiver will be considered as his receiver: *Ellicott v. Warford*, 4 Md. 80.

He has no authority to allow a demand which is not a proper charge upon the fund in his hands, without the *consent of all persons interested* in having the claim rejected, the receiver in this respect being considered *guardian of the rights of all persons interested:* High on Receivers, § 335 ; *Attorney General v.Life and Fire Ins. Co.*, 4 Paige, 224.

He has no right to waive *any defense* : High on Receivers, § 264 ; and when such receiver has disallowed demands against the corporation, it is his duty to resist the allowance of the demands * * * *and to continue his defense as long* as it can be rendered effectual: High on Receivers, § 335; *Atty. Gen. v. Ins. Co.*, 4 Paige, 224.

So far as petitioner's attachment is considered, upon the question whether or not it gives a lien the attachment is presumed to be good : *Barber v. Smith*, 41 Mich. 138 ; and, as a subsequent attaching creditor, he can contest the lien claimed by a prior attaching creditor, by a bill in chancery: *Hale v. Chandler*, 3 Mich. 532; *Hinchman v. Town*, 10 Mich. 508; *Patrick v. Montader*, 13 Cal. 434; *Whipple v. Cass*, 8 Iowa, 126; and can show that the demand of a prior attaching creditor *was not due* when the attachment was sued out : *Hinchman v. Town*, 10 Mich. 508.

As already seen, he takes the place of the corporation in the attachment suits : *Banks v. Potter*, 21 How. Pr. (N. Y.) 469 ; *McGowan v. Meyers*, 23 Northwestern Rep. 285 ; and it is held that the fund is in the hands of a court of equity, and the debtor has no right to interfere with its equitable disposition : 5 Wait's Actions, etc., p. 382 ; and it is expressly held that he takes the place of the directors of the corporation, in High on Receivers, § 329 ; *Thomas v. Whallon*, 31 Barb. 172.

The authorities hold that, as a general rule, the receiver is not allowed to employ the counsel, solicitors, or attorneys of either of the parties in a suit: Edwards on Receivers, p. 110 ; *Ryckman v. Parkins*, 5 Paige Ch. 545 ; 5 Wait's Actions, etc., p. 381; High on Receivers, § 216; *Warren v. Sprague*, 11 Paige, 200 ; *Adams v. Woods*, 8 Cal. 306 ; *Merchants', etc., Bank v. Kent Circuit Judge*, 43 Mich. 295.

The solicitor for the plaintiff should not be employed by the receiver appointed in a suit in which a large number

of interests are held by various parties. He is responsible for the exercise of his best judgment and good faith to all the parties interested, and is not to be controlled by any of the parties: *Iddings v. Bruen*, 4 Sandf. Ch. 417; and the rule expressly applies to cases where the receiver is acting adversely to one of the parties : High on Receivers, § 217; and the authorities hold that a receiver cannot employ the solicitor in the case in his own private affairs, "lest it might disarm his vigilance in watching the receiver's proceedings": *Merchants' & Manufacturers' Bank v. Kent Judge*, 43 Mich. 297; *Ryckman v. Parkins*, 5 Paige Ch. 543; *Adams v. Woods*, 8 Cal. 306.

The authorities hold that if a receiver abuses his trust, he may be removed by the court: 5 Wait's Actions, etc., p. 394; *Smith v. Wilson*, 31 How. Pr. (N. Y.) 275; and a receiver has "only such power and authority as are given him by the court, and must not exceed the prescribed limit:" *Davis v. Gray*, 16 Wall. 218.

He may be authorized by the court to compromise doubtful claims, but cannot without the court's authority: *In Matter of Croton Ins. Co.*, 3 Barb. Ch. 642.

*Hoyt Post*, for receiver.

[Brief confined to a discussion of the facts. No authorities cited.—REPORTER.]

SHERWOOD, J.    The defendant E. T. Barnum Wire & Iron Works was a corporation, having a capital stock paid in, prior to February, 1884, of $279,750.

At that date the company consisted of fifteen stockholders, among whom were the defendants Lucetta R. Medbury, William G. Thompson, Charles H. Thompson, and Henry M. Duffield, the last named having purchased his stock, consisting of $5,000 worth, on the twenty-sixth day of January previous.

Some time subsequent to February, 1884, the capital stock seems to have been increased $100,000, and the new stock was taken in April or May, 1884, by defendants Brace, Hall, Croul, Vernor, and others. Shortly after this, Charles Bewick was given some charge over the affairs of the company, and, during his investigations of the concern, discov-

ered that the company was insolvent, and made report of the fact. This soon became known, and defendants above named, Thompsons, and Medbury, and two creditors, John B. Lee and George C. Morris, besides the appellant in this case, commenced attachment suits against the defendant E. T. Barnum Wire & Iron Works.

Most of these suits were commenced to recover back money the plaintiffs had been induced to pay the company for its unissued or treasury stock, purchased, as they claimed, upon the fraudulent representation of the president of the company, under which several attachments all the personal property of the corporation within the city of Detroit was levied upon. The claims for which the several suits were brought amounted in the aggregate to the sum of about $80,000.

Lee's claim was for money loaned to the company, he taking treasury stock as security. His claim was not yet due according to its terms, but he claimed to repudiate the contract on the ground of fraudulent representations concerning the stock, and treat his debt as due from the date the company received his money. The Morris debt was for goods sold to the corporation. His attachment was the last one levied, and the appellant's was the next preceding it.

The effect of these levies was to suspend work and sales by the corporation at its manufactory, and on the twenty-eighth day of July, 1884, thereafter, the E. T. Barnum Wire & Iron Works made an assignment for the benefit of its creditors to Abram L. Stebbins, of the city of Detroit, and filed the instrument, with schedules attached, in the office of the clerk of Wayne county.

Stebbins accepted the trust in writing, but neglected to file the required bond. Thereupon the complainants above named, who were creditors to the amount of about $30,000 each, filed the bill of complaint in this cause for the appointment of a receiver pending the final determination of the attachment suits. All parties consented to the appointment of Stebbins as receiver, and he was accordingly appointed

and gave the requisite bond, with D. Whitney, Jr., S. J. Murphy, and Nancy L. Avery as sureties.

The attached property was turned over to the receiver by the sheriff, but under the terms of the order that the lien of the attachment was not to be impaired thereby; and it was tacitly understood that the suit of William H. Brace should be the first one tried as a test case. The appellant claims, for the purpose of preparing for trial it was necessary for the plaintiffs to have access to the books of the corporation to show the financial condition of the company at the time the claimed false representations were made, and at the time the attaching creditors purchased their stock, but they were denied this privilege until it was ordered by the court.

That subsequently all the attaching stockholders, except the appellant, and all the other stockholders who claimed to have been defrauded into subscribing for the stock, except two, formed a syndicate to obtain the possession of the assets of the corporation by a purchase of the debts at fifty cents on the dollar, and the claims of those two were purchased under the direction of the syndicate, and in its interest.

That the receiver was fully aware of the organization of the syndicate, and of the meetings of its members prior to its organization, and furnished to them through his counsel, Mr. Holbrook, a full statement of its assets and liabilities, according to which the assets were $37,000 over the liabilities, and the cash assets were $6,000 in excess of fifty per cent. of the unsecured debts; and that during the same period the receiver intentionally omitted to file quarterly reports as required by statute, and never filed any inventory whatever; and, further, that the syndicate were to retain him as general manager for at least a year after the reorganization.

The appellant further claims that no creditor or stockholder of a date of the alleged fraudulently obtained subscriptions was given an opportunity or allowed to join this syndicate, except D. Whitney, Jr.; that he was a director and stockholder to the amount of $10,000 before and at the

time the attaching stockholders subscribed for their stock, and had as a director declared, and as a stockholder received, dividends on his stock within less than a month of the failure; that he also claimed to be a secured creditor for more than $60,000, and an unsecured creditor for about $30,000, proofs of debt of both of which claims he had filed in the matter of the assignment; that Whitney was also the principal surety on Stebbins' bond, which was for $150,000, and before signing this bond as surety, and as an express condition to such signing, Whitney required that Stebbins should select for his counsel as receiver D. C. Holbrook, who was, and for many years had been, Whitney's confidential legal adviser and counsel, as Stebbins well knew; that Holbrook was also Stebbins' personal counsel, and was so chosen, being substituted for F. H. Canfield, who had been attorney for the company; that under Holbrook's advice the above-mentioned application for an examination of the books was resisted; that up to the time of the formation of this syndicate, which was in February, 1885, the receiver and the corporation contested all of the attachment suits.

That the appellant, Duffield, declined to join the syndicate or sell his claim for less than the amount thereof, and thereupon a meeting of the directors of the company was called, at which a majority of the directors present were members of the syndicate, and a resolution was adopted requesting the receiver to withdraw the defense in all the cases except that of Duffield, and no further defense was made to them; that this course was taken under the advice of Holbrook.

That Morris' attachment at this time had been put into judgment, after a contest, and the receiver was resisting payment thereof, and that judgments were allowed to be taken in the other cases, except the appellant's, for the full amount of each claim; and when appellant applied to have his case take the same course, the receiver replied through his attorney, Mr. Holbrook: " Mr. Stebbins deemed it his duty to defend your suit until otherwise instructed by the parties most interested."

Thereupon the appellant filed his petition in this case, set-

ting up substantially the foregoing facts claimed and stated,and in addition avers that David Whitney, Jr., not only claims to be a creditor of the corporation to the amount of $148,000 and interest, and that $60,000 is secured by a land contract for the lots on which the corporation's factory is erected, but was, at the time the petitioner contracted for his stock, and still is, a director of the corporation, and a stockholder to the amount of $20,000 ; that he is also the principal surety on the receiver's bond, given for $150,000.

That as soon as the receiver was appointed he selected as his attorney and counsel the said Holbrook,who had for more than 15 years been said Whitney's legal and confidential adviser, and still is, and that Mr. Canfield, of the firm of Moore & Canfield, was the attorney for said corporation up to the time of the assignment, and also the legal adviser of Philo Parsons, its vice-president, and E. T. Barnum, its president, and was also counsel with Holbrook for the receiver.

That they were all laboring for the interest of the syndicate, which was endeavoring to buy up the claims against the company at 50 cents on the dollar, and organize a new company to take the assets, and advance 150 per cent. on the amount of the stock held by each for that purpose, but which it was understood was to be repaid as soon as the syndicate was able to get up the indebtedness at the sum proposed, and receive an equal amount of stock in the new organization as each held in the old corporation; and that it was understood the attachment suits should be used as inducement to compel creditors to accept the compromise of 50 cents on the dollar of their claims.

That said Whitney was given great advantage and preference in the reorganization, and that the receiver was cognizant thereof, and in collusion with the syndicate, and that he lent his knowledge and experience in the conduct of the business to aid such new organization; that he and Whitney were active participants in the furtherance of the designs of the syndicate, and that the actual condition of the corporation was concealed by the receiver from the general credi-

tors in order that the prosecution of the work of the syndicate might be more effectually carried on.

And it is further averred in the petition that Holbrook and Canfield were not proper persons to be employed as attorneys and counselors for the receiver; that they were used really in the interest of the syndicate, and not in the interest of creditors; that the claims of the other attaching creditors rested upon the same facts as did the appellant's, and there was no reason why he should not have been allowed to take his judgment at the time the others took theirs, and that the refusal to allow him to take such judgment was only for the purpose of punishing appellant for refusing to come into the agreement to compromise his claim for 50 cents on the dollar; and that the receiver and directors fraudulently connived and conspired together and allowed the judgments to be taken for that purpose, and to cheat and defraud him and the other creditors of the company.

And it is further charged in the petition that the receiver sent over to Chicago a third party, in the interest of the syndicate, and bought up the assets of the corporation there for 25 cents on the dollar of their appraised value, to the prejudice and in fraud of the rights of the creditors, and that the sale ought not to stand or be approved; and that it is doubtful whether there are sufficient assets covered by the attachments preceding his, and including the property on which his is levied, to pay all, including his claim, by reason of the improper management of the receiver, and he is therefore prejudiced and deprived of his just rights by the consent of the receiver given permitting the taking of said judgments.

The prayer of the petition is as follows:

1. That the said Abram L. Stebbins be removed as receiver, " and some proper and impartial person appointed in his stead.

2. That, pending the determination of the matters alleged in this petition, said Abram L. Stebbins be directed not to make any payments or promise of payment, or deliver any property, or execute any paper, to said attaching defendants upon any of the judgments above named, or on account of

the claims upon which said judgments are formed, or on any account whatever.

3. That said attaching defendants show cause, on a day to be named in the order, why they should not be commanded to set aside their said judgments as obtained by collusion with said company and said receiver, and in fraud of the rights of the general creditors and stockholders of said company.

4. That, pending the determination of the matters set forth in this petition, said Abram L. Stebbins, receiver, be directed not to pay any moneys, or deliver any property, or execute any paper, in favor of any syndicate, or trustees for or members of any syndicate, upon any claims purchased of any creditors, or in any way, manner, or form to disburse any moneys, except for strict running and proper current expenses.

5. That if for any cause full relief, as prayed in this petition, cannot be granted under the prayer of a petition, but should be prayed for in an original bill filed for that purpose, then that such relief as is possible to be given under this petition be so granted, and that leave be granted to petitioner to file the proper bill in this honorable court for such purpose."

Added to the above was the prayer for general relief.

Separate answers were filed to the petition by defendants Brace, Hall, Medbury, Croul, Vernor, Thompsons, Lee, and the corporation.

The answer of the receiver states substantially, after admitting several things stated in the petition, and denying others, that he "has nothing to do with the subject-matter of the several agreements among the attaching stockholders; that he is no party to any syndicate, has not confederated with or been a party to any of the schemes mentioned in said petition, nor in any way assisted any party therein, nor advised the carrying out of any project or scheme; that he has never attended any of said conferences or meetings, nor has his solicitor on his behalf taken any part therein, nor was he then, nor is he now, interested therein in any way; that all he has done was to furnish certain statements of the assets of said company; and he alleges he has furnished and exhibited similar statements to all when desired, and particularly to Emory Wendell, Moore & Moore, and Douglas & Bowen, attorneys for many creditors; that he has never

shown any favor to any one person more than to another; that he has never furnished any money to any one or for any purpose except to carry on such business as he is permitted by the order of the court. He denies in detail the allegations about the sale of the Chicago assets; avers he has on hand over $90,000 in bank, and is advised petitioner has only to establish his right to recover and he will be entitled to be paid his claim in full. As to the said judgments, he says the directors by resolution declined to further defend the suits mentioned, and thereupon, being thereto requested by the holders of 19-20ths of the indebtedness, he gave instructions to the attorneys that he did not desire to make any further defense; that he is advised by his solicitor that, without the further order of the court, he cannot pay said judgments nor any other claim, nor does he intend to pay out any money except by the authority of the court."

In the view we take of the matter it will not be important to refer to the answers of the other defendants in the case. A large amount of testimony was taken.

The petition, with the several answers made and testimony taken, was submitted to Judge Speed, who caused to be entered an order denying the relief asked by the appellant, and dismissing his petition; but containing the following clause:

"And it appearing from the proceedings in this cause that the same is necessary and proper, it is further ordered and decreed that Hoyt Post, Esq., be, and he is hereby, designated and appointed as attorney and counsel for the receiver in this cause."

The petitioner, on his appeal to this Court, insists the circuit judge erred, as follows:

1. Upon the showing made, he should have removed the receiver;

2. In refusing to order the attaching stockholders, who had obtained consent judgments by collusion with the receiver, to set the same aside;

3. In refusing any relief in the case, and dismissing appellant's petition.

We have no doubt but that the proceeding taken is a proper one to obtain the relief prayed, provided the appellant can show that he has interest which would be injuriously affected by the alleged illegal acts complained of.

A receiver is not appointed for the benefit merely of a party on whose application the appointment is made, but equally for the benefit of all persons who may establish rights in the case. He is not the complainant's agent, but should be equally the representative of all the parties in his capacity as an officer of the court: High Rec. § 175; *Delany v. Mansfield*, 1 Hogan (Irish Rolls Ct.) 234.

The exercise of the power to remove a receiver for cause is regarded as a matter properly resting in the discretion of the court, and must necessarily be governed by the circumstances of each particular case, and, as an officer of the court, the receiver should remain unbiased and impartial, or be removed. The position is one often requiring the exercise of soundest judgment, and always the strictest impartiality among creditors: High Rec. §§ 820, 821; *Williamson v. Wilson*, 1 Bland, 418; 2 Daniell's Ch. 1715, and cases cited; 5 Wait's Act. & Def. 353, 381; *Iddings v. Bruen*, 4 Sand. Ch. 417; *Davis v. Gray*, 16 Wall. 217, 218; *Delany v. Mansfield*, 1 Hogan, 234; *Ellicott v. United States Ins. Co.*, 7 Gill, 307; *Attorney General v. Life, etc., Ins. Co.*, 4 Paige, 224; High Rec. § 264: Edw. Rec. 110; *Merchants' & Manufacturers' Nat. Bank v. Kent Circ. Judge*, 43 Mich. 297; *Adams v. Woods*, 8 Cal. 306; *First Nat. Bank Detroit v. Barnum Wire & Iron Works*, 58 Mich. 124, 315; *Ryckman v. Parkins*, 5 Paige, 543.

If it were necessary for us to consider all the testimony taken in disposing of the case, or to pass upon the necessity of removing the receiver, and of the sufficiency of the showing therefor, in order to preserve the rights of Col. Duffield in the premises, we should find much difficulty, under the authorities above noted (and which contain the law upon the subjects treated), in doing so, without finding a case made entitling the appellant to the order prayed for in his petition; and, while we agree with the learned circuit judge in the

action he took in appointing an attorney for the receiver in the place of those who had been acting as such for him, we should feel compelled to differ with him in several other conclusions he.has reached, contained in his written opinion filed in the case, as to the character of the action of the receiver and that of the other defendants.

The answer of the receiver to the petition of the appellant shows, and it was not sought to be controverted in the argument upon the other side, that the receiver has in bank the sum of $90,000, and that he is ready and willing, and is advised it is his right, to pay the appellant the full amount of his claim as soon as an adjudication thereof can be had, and that moneys are set apart under the order of the court for that purpose.

Again, the petition was filed in behalf of the appellant and such other creditors of the corporation as might come in and make themselves parties thereto. None, however, it seems desired to avail themselves of the opportunity to ask for the removal of the receiver, and we have been unable to find in the record any evidence that any others of the creditors of the company desire the removal of Mr. Stebbins, and, in the absence of any such showing, we think it must be presumed that they are satisfied with his action and proceedings.

Under the circumstances, we think that all the appellant can ask in the premises is payment of his debt in full when he shall have established it in such manner that the receiver can make payment in safety. This he already, under the action of the court, has secured to him, and this is the extent of his interest in the matter, and we are unable to discover that it is in the least prejudiced or impaired by a continuance of Mr. Stebbins in the receivership, and so long as all the rest of the creditors are satisfied it would be unjust to them to remove him.

The action of the circuit judge must therefore be affirmed, and each party must pay his own costs.

The other Justices concurred.