*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ECP COMMERCIAL II, LLC,

       Plaintiff-Appellee,

v

FAMJ INVESTMENTS COMPANY, TOWN
CENTER DEVELOPMENT COMPANY, INC.,

       Defendants-Appellants,

and

TOWN CENTER FLATS, LLC, and TOMA
FAMILY,

       Appellants,

and

KUS RYAN & ASSOCIATES, PLLC,

       Appellee.

UNPUBLISHED
September 8, 2022

No. 356940
Macomb Circuit Court
LC No. 2016-003932-CB

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's order awarding $20,075 in legal fees to defendants' former legal counsel in this action, Kus Ryan & Associates, PLLC (Kus Ryan). Defendants also challenge the propriety of the trial court's decision to appoint a receiver in connection with enforcing a settlement agreement that resolved the underlying litigation. The claims and disputes involved in the underlying litigation are not at issue in this appeal; instead we are only presented with disputes involving the enforcement of the parties' settlement agreement and postjudgment matters. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

-1-

Plaintiff and defendants entered into a settlement agreement to resolve the underlying lawsuit between them. In the settlement agreement, defendants agreed to pay plaintiff "the principal sum of $2,000,000, plus whatever interest, expenses and costs are set forth in this Agreement." The settlement provided a schedule of deadlines by which defendants were to sell certain parcels of land and convey the proceeds to plaintiff until the settlement amount of $2,000,000 plus interest, expenses, and costs had been satisfied. The agreement provided that defendants would be in default if they failed to make any payment when due, breached any of the terms or conditions of the agreement, failed to maintain any of their property, or failed to pay real property taxes when due.

Under the terms of the settlement agreement, plaintiff was "entitled to immediate payment of the Settlement Amount" if defendants defaulted, and plaintiff was further entitled in such circumstances to "recover its costs and expenses, including reasonable attorneys' fees, incurred in enforcing its rights under this Agreement." The settlement agreement further authorized plaintiff to marshal defendants' assets to pay the settlement amount if defendants defaulted; in general terms, the agreement allowed for certain real property assets to be sold and stock to be liquidated to satisfy the settlement amount.

Subsequently, plaintiff moved for the appointment of a receiver to preserve and manage assets and to ensure defendants' performance under the settlement agreement. Plaintiff alleged that defendants were in default of the settlement agreement, having failed to comply with numerous terms of the agreement. Plaintiff explained that defendants had failed to effectuate the necessary real estate sales and had failed to make $1,000,000 in payments to plaintiff that were past due under the settlement agreement. Further, after having committed these defaults, defendants failed to appoint an auctioneer to sell certain real estate properties and failed to pay the entire settlement amount as provided under the terms of the settlement agreement in case of default. Plaintiff also alleged that defendants failed to surrender other assets and produce documents as required under the terms of the parties' agreement. Defendant also failed to respond to plaintiff's requests to correct an issue with the legal description in the deed to one of the real properties to be sold. Plaintiff argued that the trial court's inherent equitable powers and MCL 600.2926 authorized the court to appoint a receiver and that a receiver was warranted in this case because defendants had demonstrated their inability to comply with the terms of the settlement agreement and there was no viable alternative means for accomplishing the necessary sale and disposition of assets to satisfy the amount owed to plaintiff.

At a hearing on the motion, defendants admitted on the record that they were in default of the settlement agreement by failing to make the required $1,000,000 payment. However, defendants objected to the appointment of a receiver because there was nothing in the settlement agreement that provided for appointing a receiver in case of default. After hearing oral argument from the parties, the trial court ruled that it would appoint a receiver for the purpose of carrying out the parties' settlement agreement. The court reasoned that a receiver was warranted based on the parties' continuous disagreements and inability to complete the property sales. The court further stated that the receiver would be obligated to maximize the value of the property.

On January 11, 2021, the trial court entered an order to terminate the receivership and resolve outstanding issues. This order indicated that the receiver's final report and accounting had been approved. The order further provided that an issue regarding attorney fees defendants owed

to their former counsel, Kus Ryan, had been resolved by stipulation of the parties on the record. Nonetheless, defendants' former counsel subsequently moved to enforce this agreement, alleging that defendants had failed to tender a final payment of $20,075 as agreed. After holding a hearing on the motion, the trial court entered a written opinion and order granting the motion and awarding Kus Ryan a money judgement of $20,075 against defendants.

Defendants now appeal. Further facts necessary to the resolution of the issues on appeal will be included below.

## II. APPOINTMENT OF RECEIVER

Defendants first appear to argue that the trial court abused its discretion by appointing a receiver, and that this order should never have been entered, because the appointment of a receiver was not a remedy specifically provided for in the parties' settlement agreement. Defendants contend that the trial court rewrote the parties' settlement agreement by appointing a receiver.

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006) (quotation marks and citation omitted). We review the interpretation of a contract de novo as a question of law. *Id*. This Court reviews a trial court's decision to appoint a receiver for an abuse of discretion. *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 390; 853 NW2d 421 (2014); *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 273; 761 NW2d 761 (2008). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Ypsilanti Charter Twp*, 281 Mich App at 273.

"Circuit court judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law." MCL 600.2926. This Court has held that MCL 600.2926 provides a "circuit court [with] 'broad jurisdiction' to appoint a receiver in appropriate cases." *Arbor Farms*, 305 Mich App at 390 (citation omitted). Furthermore,

> [MCL 600.2926] has been interpreted as authorizing a circuit court to appoint a receiver when specifically allowed by statute and also when no specific statute applies but the facts and circumstances render the appointment of a receiver an appropriate exercise of the trial court's equitable jurisdiction. The purpose of appointing a receiver is to preserve property and to dispose of it under the order of the court. In general, a receiver should only be appointed in extreme cases. But a party's past unimpressive performance may justify the trial court in appointing a receiver. [*Id*. at 390-391 (quotation marks and citation omitted; alteration in original).]

Here, the trial court appointed a receiver for purposes of preserving assets, maximizing the value of assets, and effectuating the sale of certain assets in order to secure funds to pay the debt defendants owed to plaintiff after defendants admitted to being in default of the settlement agreement. The trial court specifically indicated that the purpose of appointing a receiver was to facilitate the completion of terms outlined in the settlement agreement. "A court-appointed receiver is a ministerial officer of the court, charged with the task of preserving property and assets

during ongoing litigation." *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 528; 730 NW2d 481 (2007). A receiver is appointed "to protect and benefit both parties equally," and "a receiver's possession of assets and property is tantamount to possession by the court itself." *Id*.

Contrary to defendants' argument, the trial court was not prohibited from appointing a receiver merely because the settlement agreement did not specifically provide that plaintiff could move for the appointment of a receiver; the trial court possessed the authorization to appoint a receiver pursuant to the court's equitable powers. MCL 600.2926; *Arbor Farms*, 305 Mich App at 390-391. "[T]he circuit court may not delegate the power to appoint a receiver to a private party. The power to appoint a receiver belongs exclusively to the circuit court." *Ypsilanti Fire Marshal*, 273 Mich App at 528. Defendants have not demonstrated on appeal that the trial court abused its discretion by appointing a receiver under the facts and circumstances of this case. *Arbor Farms*, 305 Mich App at 390-391; *Ypsilanti Charter Twp*, 281 Mich App at 273.

To the extent defendants raise other complaints about the procedures followed by the trial court in granting the order to appoint a receiver, such as the alleged failure to order the receiver to post a bond, defendants have failed to sufficiently develop or explain any cogent legal theory on which they could potentially be entitled to any appellate relief. These arguments are therefore abandoned. "An appellant may not simply announce a position on appeal and leave it to this Court to rationalize the basis for that claim. Defendant's failure to properly address the merits of his assertion of error constitutes an abandonment of this issue on appeal." *Ypsilanti Charter Twp*, 281 Mich App at 287 (citation omitted). It is not the role of this Court to develop defendants' argument for them. *Ypsilanti Fire Marshal*, 273 Mich App at 530 n 13.

Next, defendants argue that the trial court erred by not terminating the receivership immediately after September 25, 2020, when the settlement amount was paid to ECP. Defendants argue that the receiver's actions after this date were void.

It appears that defendants contend that the receivership should have terminated automatically by operation of law and that the trial court had no discretion in defining the termination of the receivership. This is an incorrect understanding of the law. We "review for an abuse of discretion a trial court's decision to discharge a receiver and to terminate the receivership." *Ypsilanti Fire Marshal*, 273 Mich App at 523. "Equity courts have inherent power to appoint a receiver, and it is a matter of discretion whether a receivership shall be continued or discontinued." *Singer v Goff*, 334 Mich 163, 167; 54 NW2d 290 (1952) (citation omitted).

The statutory provision relied on by defendants in their appellate brief, MCL 554.1032(4), is not to the contrary; that provision states in relevant part that the "court may discharge a receiver and terminate the court's administration of the receivership property if the court finds that appointment of the receiver was improvident or that the circumstances no longer warrant continuation of the receivership." Furthermore, under MCL 600.2926, the "court may terminate any receivership and return the property held by the receiver to the debtor whenever it appears to be to the best interest of the debtor, the creditors and others interested." "In general, a receiver should be discharged and the receivership terminated when the initial reasons for the receivership cease to exist." *Ypsilanti Fire Marshal*, 273 Mich App at 540.

Here, the trial court appointed the receiver initially for the purpose of carrying out the terms of the parties' settlement agreement. The settlement agreement specifically provided that plaintiff was entitled to recover its expenses, costs, and reasonable attorney fees incurred in enforcing its rights under the agreement. The court's receivership orders[1] defining the receiver's powers and duties provided for payment of the receiver's compensation, as well as the fees for legal counsel or other professionals engaged to assist the receiver, from the receivership estate. The receiver was also granted exclusive control over managing the receivership assets, which included deposit accounts and "all rents, income, monies, fees, revenues, proceeds, and profits now existing or hereafter generated from the collection, sale or other disposition of [certain real property interests]." The receiver was further granted the power to perform obligations and exercise rights under existing agreements between defendant FAMJ Investments and any third parties, and the receiver was authorized to "negotiate with any creditors and contract counterparties of FAMJ for the purpose of compromising or settling any claim."

As defendants admit on appeal, after September 25, 2020, the parties continued to argue about matters pertaining the terms of selling real property and other claims against the receivership estate. The trial court denied defendants' motion to terminate the receivership on December 21, 2020, because of outstanding issues to be resolved under receivership order. On appeal, defendants do not explain how these outstanding issues did not warrant the continuation of the receivership. Defendants merely assert that the receivership should have been terminated because—according to *defendants*—there was nothing left for the receiver to do. Defendants do not develop any cogent argument based on legal authority to support their assertion. Accordingly, defendants have failed to demonstrate that the trial court abused its discretion with respect to the termination of the receivership. *Singer*, 334 Mich at 167; *Ypsilanti Fire Marshal*, 273 Mich App at 523.

Finally, to the extent defendants appear to further challenge the trial court's decisions with respect to certain "developer's rights" and the cost of the receivership, defendants have "abandoned the issues by failing to specifically raise them in [their] statement of the questions presented." *Ypsilanti Fire Marshal*, 273 Mich App at 543.

## III. ATTORNEY FEES

Defendants additionally challenge the trial court's order regarding attorney fees to be paid to defendants' former counsel in this litigation, Kus Ryan.

At the December 21, 2020 hearing, defendants through different counsel explicitly stated on the record that they had agreed, and would not further contest, the payment from the receivership estate of $180,619.88 in attorney fees to defendants' former counsel, Kus Ryan. Further, defendant's counsel stated, "we've decided to settle our differences with regard to the objections of [former counsel's] invoice." Defendant's counsel also acknowledged that the $180,619.88 might not fully cover former counsel's attorney fees. Defendant's former counsel subsequently explained at the hearing that there had been agreement on the amount of the "shortfall" and that she and defendant's current counsel had "memorialized it over the weekend in

---

[1] We refer to both the original receivership order and the receivership order as subsequently amended.

e-mails." Defendant's former counsel further explained, "It'll be paid by check today in the manner we discussed in our e-mail. So, with that, with the payment from the receiver and the payment from [defendants], my claim is discharged." Defendant's current counsel did not object to this explanation, and the trial court concluded that the matter had been resolved. This agreement between the parties was subsequently memorialized in orders entered by the trial court.

Defendants' former counsel later moved to enforce this agreement, alleging that defendants had failed to tender the additional payment by check as agreed. Defendants' former counsel requested that the trial court order defendants to immediately submit this payment, which amounted to $20,075. Following a hearing on the motion, the trial court entered a written opinion and order granting the motion and awarding Kus Ryan a money judgement of $20,075 against defendants. The trial court ruled that defendants' argument that the $20,075 represented fees for services Kus Ryan provided to another client that was not a party to the instant case was without merit because "Defendants failed to provide any evidence to substantiate" this claim. The trial court also ruled that the record, including the e-mail exchanged between defendants' current and former counsel, established that defendants had agreed to pay Kus Ryan $20,075 by check in addition to the amount distributed to Kus Ryan from the receivership estate.

In challenging these rulings on appeal, defendants fail to address the actual bases for the trial court's decisions, instead opting to attempt to relitigate the issue as if this Court were the trial court. An appellant bears the burden of demonstrating an error by the trial court, and an appellant abandons an assertion of error by failing to address the trial court's actual decision when arguing for appellate relief. See *Redmond v Heller*, 332 Mich App 415, 435 n 9, 449; 957 NW2d 357 (2020). Although defendants raise a host of general complaints about their former counsel and the trial judge in this matter, defendants ultimately concede in their appellate brief that they only challenge the order requiring defendants to pay $20,075 to Kus Ryan. Defendants appear to base their challenge on the allegation that this amount represented fees billed to a nonparty entity. However, as they did in the trial court, defendants merely assert this allegation without explaining how the evidence that was before the trial court actually supports this contention or why the trial court's reasoning was erroneous. Defendants do not cite any specific billing charge that can be demonstrated to represent a bill to a different entity. Defendants fail to address that when the trial court explicitly asked defendant's counsel on the record at the January 19, 2021 hearing to point to the evidence substantiating their claim that the $20,075 was attributable to fees owed by a different entity, defendants' counsel was unable to do so. Thus, defendants have abandoned this claim on appeal and failed to demonstrate any error on this basis. *Id*. Defendants may not simply announce their position and leave it to this Court to develop their argument. *Ypsilanti Charter Twp*, 281 Mich App at 287; *Ypsilanti Fire Marshal*, 273 Mich App at 530 n 13.

To the extent defendants appear to maintain there was no agreement with Kus Ryan regarding these fees, defendants merely assert their characterization of the evidence without providing a cogent legal analysis of the trial court's *actual* reasons for concluding to the contrary. Thus, this argument is also abandoned. *Redmond*, 332 Mich App at 435 n 9, 449.

With respect to the remainder of the fees that were paid to Kus Ryan out of the receivership estate, defendants admitted on the record in the trial court that any dispute regarding this amount was settled and that they were not contesting it. "A party may not take a position in the trial court

and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Kloian*, 273 Mich App at 455 n 1 (quotation marks and citation omitted).

Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica